IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **CRAIG PLOWMAN,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 24-0444-WS-MU |
| | ) |
| **DRAX d/b/a ALABAMA PELLETS, LLC,** | ) |
| | ) |
|     **Defendant.** | ) |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **JERMAINE WOODARD,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 24-0483-WS-MU |
| | ) |
| **DRAX d/b/a ALABAMA PELLETS, LLC,** | ) |
| | ) |
|     **Defendant.** | ) |

# ORDER

These matters are before the Court on the plaintiffs' motions to consolidate. (*Plowman*, Doc. 14; *Woodard*, Doc. 14). The plaintiffs seek consolidation for all purposes. The defendant consents to consolidation for purposes of discovery but opposes consolidation for purposes of dispositive motions, pretrial matters, and trial. (*Plowman*, Doc. 16; *Woodard*, Doc. 16). The plaintiffs have filed replies, (*Plowman*, Doc. 19; *Woodard*, Doc. 19), and the motions are ripe for resolution. After careful consideration, the Court concludes that the motions to consolidate are due to be granted in part and denied in part.

Consolidation under Rule 42(a) requires the presence of "a common question of law or fact." Fed. R. Civ. P. 42(a). The parties agree that this prerequisite is satisfied. Even so, consolidation "is permissive and vests a purely discretionary power in the district court." *Young v. City of Augusta*, 59 F.3d 1160, 1168 (11th Cir. 1995) (internal quotes omitted). In exercising that discretion, district courts must weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions; the burden on the parties and the Court posed by multiple lawsuits as opposed to one; the length of time required to conclude multiple lawsuits as opposed to one; and the relative expense of proceeding with separate lawsuits if they are not consolidated. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985).

The plaintiffs emphasize that they both were supervisors employed by the defendant; that both reported to the general manager; and that both were fired on the same day, without explanation, by a new general manager shortly after they had separately voiced their opposition to his perceived mistreatment of employees.[1]

There are, however, significant differences in the plaintiffs' cases as articulated in their complaints. First, while Woodard brings a claim of racially discriminatory training, discipline, and termination, Plowman brings no similar claim.[2] Second, while Plowman's complaint alleges his opposition to the treatment of both female and African-American employees, Woodard's complaint alleges only his opposition to the treatment of African-American employees. Third, while Plowman alleges he raised his concerns with Human Resources and with the general manager himself, Woodard alleges he raised his concerns with Plowman and with a vice-president of the defendant.

---

[1] The plaintiffs assert that they both "were terminated after refusing to help [the general manager] falsely accuse and target [a specific African-American] employee for termination." (Doc. 14 at 2). That is not what the complaints actually allege. (*Plowman*, Doc. 1, ¶ 12; *Woodard*, Doc. 1, ¶ 11).

[2] Plowman does bring claims for "disparate treatment based on opposing race [and gender] discrimination," (Doc. 1 at 4, 6), which, even if somehow different from a retaliation claim, are not claims of disparate treatment based on Plowman's race or gender.

The defendant, after pointing out these differences, states that its defense to each plaintiff's claims will differ as well. In particular, the defendant "does not assert the same reason for its discharge decisions [and] intends to show each engaged in different forms of misconduct and had different disciplinary histories leading to the discharge decisions." (Doc. 16 at 2-3).

As this Court has ruled several times, "[t]he party requesting consolidation bears the burden of showing that the balance [of the *Hendrix* factors listed above] weighs in favor of consolidation." *Diehl v. Money Source, Inc.*, 2018 WL 1370613 at *2 (S.D. Ala. 2018); *accord Pennsylvania Lumbermens Mutual Insurance Co. v. D.R. Horton, Inc.*, 2015 WL 7888150 at *4 (S.D. Ala. 2015); *Northstar Marine, Inc. v. Huffman*, 2014 WL 4167019 at *2 (S.D. Ala. 2014). The plaintiffs, however, ignore those factors in their principal brief, instead urging the Court to order consolidation simply because the cases are new, are at the same incipient stage of litigation, have "similar factual and legal issues," and because both plaintiffs are represented by the same counsel. (Doc. 14 at 4).

In their reply brief, the plaintiffs finally address (some of) the *Hendrix* factors. (Doc. 19 at 3-5). Their effort is too little, too late. "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply. ... Unless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the Court will not grant relief based on arguments first raised in reply." *Parker v. Exterior Restorations, Inc.*, 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023) (internal quotes omitted). The *Hendrix* factors are well known,[3] and the plaintiffs even cited *Hendrix* for a different proposition in their principal brief. (Doc. 14 at 3).[4] Under these circumstances, and without any explanation for their failure to address the *Hendrix* factors initially, the Court declines to consider their tardy argument.

---

[3] This Court has addressed the *Hendrix* factors in over a dozen online opinions, including two cited by the plaintiffs.

[4] The *Hendrix* factors are spelled out a mere three sentences after the sentence quoted by the plaintiffs. 776 F.2d at 1495.

In any event, the plaintiffs' *Hendrix* analysis does not support consolidation. They address the burden, length of time, and/or relative expense of two trials rather than one only by saying the same witnesses are involved in both cases. (Doc. 19 at 3). But the plaintiffs do not identify these witnesses or even offer a ballpark estimate of their number, leaving the Court to speculate about the relative efficiency of one trial versus two.

Instead, the plaintiffs insist that any "minimal prejudice" to the defendant "is outweighed by a substantial risk of inconsistent jury verdicts." (Doc. 19 at 3). That is not the correct balancing formulation; instead, a court weighs the risk of prejudice "and possible confusion" against the risk of "inconsistent adjudications" on "common factual and legal issues." *Hendrix*, 776 F.2d at 1495 (internal quotes omitted). The plaintiffs have not identified any potential for inconsistent determinations in the absence of consolidation. It seems doubtful that this Court would render contradictory rulings on any common legal issue, and truly *common* factual issues do not appear to be all that common.[5] In any event, the plaintiffs identify not a single common question of fact that they believe presents a danger of inconsistent resolution. On the other hand, shuffling together the evidence relevant only to Plowman's case with that relevant only to Woodard's case appears to risk jury confusion (and attendant potential prejudice to the defendant) as to what evidence may be considered for what purpose as to which plaintiff, a risk the plaintiffs ignore and that may or may not "be alleviated by utilizing cautionary instructions to the jury during trial and controlling the manner in which the plaintiffs'

---

[5] To be sure, there are *similar* questions aplenty: did the plaintiff engage in protected activity? did the general manager know of this activity? did the general manager respond by retaliating? did the plaintiff have performance and/or disciplinary issues? and so on. The answer to each of these questions, however, depends on different evidence, specific to the specific plaintiff, such that there would be no inherent inconsistency between a finding in favor of one plaintiff as to any one of these questions and a finding against the other plaintiff on the same question. The present scenario is thus unlike, say, products liability litigation, where different juries could reach contradictory findings on the truly common question of the defectiveness *vel non* of the same product.

claims (including the defenses thereto) are submitted to the jury for deliberation." *Hendrix*, 776 F.2d at 1495.

For the reasons set forth above, the Court exercises its discretion against consolidation at this time. Pursuant to Rule 42(a)(3), the Court directs the Magistrate Judge to treat the actions as consolidated for purposes of discovery and to establish in each case the same pretrial deadlines (including for the filing of motions for summary judgment), pretrial conference dates, and trial terms; to this extent, the motions to consolidate are **granted**. In all other respects, the motions to consolidate are **denied**, without prejudice to the plaintiffs' ability to seek such relief should both cases survive the defendant's anticipated dispositive motions.[6]

DONE and ORDERED this 2nd day of April, 2025.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6] The defendant expressly agrees that the plaintiffs may pursue a second motion to consolidate at that time. (Doc. 16 at 3-4).